IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN BROWN, as Administrator of the Estate of MATHEW ORSINI, deceased,<br><br>    Plaintiff<br><br>vs.<br><br>ERIE COUNTY, WEXFORD HEALTH SOURCES, INC., MEDICAL ASSOCIATES OF ERIE, INC., DIAGNOSTIC X-RAY SERVICE, INC., GARY L. PETERSON D.O., and DAVID PAUL, M.D.,<br><br>    Defendants. | Case No. 1:20-CV-0251 (Erie)<br><br>SUSAN PARADISE BAXTER<br>UNITED STATES DISTRICT JUDGE<br><br>RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE<br><br>REPORT AND RECOMMENDATION ON DEFENDANT ERIE COUNTY'S MOTION TO DISMISS<br><br>ECF NO. 36 |

I.    Recommendation

It is respectfully recommended that Defendant Erie County's motion to dismiss Count I of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) be granted. Because Plaintiff may be able to cure certain deficiencies in Count I, it is further recommended that dismissal of Count I be without prejudice and that Plaintiff be granted leave to file a second amended complaint. Finally, if Plaintiff declines to file a second amended complaint, it is further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

II.    Introduction

Nineteen-year-old Mathew Orsini (Orsini or decedent) died on March 18, 2019, three weeks after he entered the population of the Erie County Jail. ECF No. 22. Plaintiff Dawn Brown (Plaintiff), as administrator of his estate, alleges that Orsini's death was the result of Erie County's unconstitutional policies and practices as well as the professional negligence of the named medical defendants. *Id.* Plaintiff's sole claim against Erie County and sole basis for federal court jurisdiction is Count I of the Amended Complaint, which alleges that Erie County's policies and practices were

1

deliberately indifferent to Orsini's rights under the Eighth and Fourteenth Amendments to the United States Constitution and the cause of his death. Plaintiff brings this claim pursuant to 42 U.S.C. §1983 and *Monell v. Dep't of Social Serv. of City of N.Y.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).

Erie County moves to dismiss Count I on the grounds that Plaintiff's factual allegations do not support an inference that it maintained a policy or practice of deliberate indifference to inmates' medical needs or that any policy or practice of the County was the "moving force" behind the violation of Orsini's constitutional rights. ECF No. 37. The motion has been fully briefed and the Court heard argument on the motion in open court on May 14, 2021. ECF Nos. 36-37; 41-42; 45-46. Accordingly, the motion is ripe for decision.

III.    Legal Standard on Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, a court is not opining on whether a plaintiff is likely to prevail on the merits; instead, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). In making this determination, the court must accept as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts in the complaint. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. *See also McTernan v. City of York, Pa.*, 577 F.3d 521, 531 (3d Cir. 2009).

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

IV.  Amended Complaint

Plaintiff's Amended Complaint alleges the following facts, which the Court accepts as true for purposes of Erie County's motion to dismiss:

On February 25, 2019, Orsini began a period of detention at the Erie County Jail.[1]  ECF No.

---

[1] Plaintiff's Amended Complaint does not specify whether Orsini was in custody as a pretrial detainee or an inmate pursuant to a sentence of incarceration following conviction. During argument on Erie County's motion, Plaintiff's counsel advised the Court that Orsini was a pretrial detainee at the time of his death.

3

22 ¶ 21.  At intake, he informed Nurse Teri Masi that he had undergone an aortic valve replacement in 2009, had a history of cardiovascular disease and hypertension, and was taking medication (Atenolol and Losartan) to treat his heart condition.  *Id.*, ¶¶ 19, 22-23.  Nurse Masi recorded his surgical history on his "Medical Nurse Order Form" and ordered that his blood pressure be checked every Monday, Wednesday, and Friday for two weeks.  *Id.*, ¶ 23.  It is unclear from the Amended Complaint whether this was done.  *Id.*

Two weeks later, Orsini complained to Heidi Karash, Director of Nursing at the Erie County Prison, that he had not yet been provided with his prescription medications.  *Id.*, ¶¶ 24, 30.  Director Karash responded that his local pharmacy reported that he last refilled his prescriptions in December.  *Id.*, ¶ 25.  Although Orsini objected to Director Karash's assertion that he had not taken his medication in "a while," Director Karash replied that his vital signs would continue to be monitored and a doctor would review his records and vitals at his next appointment.  *Id.*, ¶ 25.  It is unclear from the pleadings whether this appointment occurred prior to Orsini's death.

On March 18, 2019, Orsini notified security that he was experiencing shortness of breath, tooth pain, and back pain.  *Id.*, ¶¶ 27-28.  Nurse Denise Long prescribed ibuprofen and gave him techniques to slow his breathing.  *Id.*, ¶ 27.  Three hours later, Orsini complained of heartburn.  *Id.*, ¶ 29.  Defendant Dr. Gary Peterson was contacted by phone, and he ordered "Alum/mag/s."  *Id.*  Ten minutes later, Orsini began hyperventilating and withering in pain.  *Id.*, ¶ 30.  An X-ray of his chest, lumbar spine, and thoracic spine was taken by Defendant Diagnostic X-Ray Service, Inc.  *Id.* ¶ 31.  Defendant Dr. David Paul, a radiologist, diagnosed Orsini with left lower lung pneumonia with effusion.  *Id.*, ¶ 34.  He ordered a Z-Pac, Augmentin, and a follow-up X-ray on March 26, 2019.  *Id.*, ¶ 38.  Although an EKG was attempted, Orsini was not cooperative because he was unable to remain still.  *Id.*, ¶ 37.

At some point, Orsini started vomiting in the B-pod.  *Id.*, ¶ 39.  He also turned very pale and

became unsteady on his feet. *Id.* Although a staff nurse and another medical employee witnessed this, they offered no medical assistance. *Id.,* ¶¶ 39-40. Instead, Corrections Officer Howell taunted Orsini, stating he "just needs his Mommy." *Id.,* ¶ 40. Other officers nearby told Orsini he was fine and all he needed was a shower. *Id.* ¶ 41. However, Orsini continued to vomit and complain about chest pain while clutching his chest until he ultimately became unresponsive. *Id.,* ¶¶ 42-43. An ambulance was called at 10:01 p.m. *Id.,* ¶ 42-43.

As soon as the paramedics arrived, they began CPR. *Id.,* ¶ 43. An AED was not able to detect a shockable rhythm. *Id.* Orsini was transported to UPMC Hamot via ambulance. *Id.,* ¶ 44. In route, paramedics continued chest compressions and administered multiple doses of epinephrine. *Id.* At the hospital, Orsini was given 3 liters of normal saline and started on a norepinephrine drip. *Id.,* ¶ 46. Shortly thereafter, Orsini went into cardiac arrest. *Id.* He was declared dead at 11:01p.m. *Id.*

An autopsy was performed on March 28, 2019 at UPMC Children's Hospital of Pittsburgh. *Id.,* ¶ 47. The autopsy report concluded that the cause of death was a rupture of an aortic aneurysm. *Id.* Included in the final autopsy diagnosis was "dissecting aortic aneurysm (Type 1) with rupture of aortic root." *Id.* The final autopsy also revealed that Orsini had a "marfanoid body habitus consisting of pectus excavatum, retrognathia, arachnodactyly, camptodactyly[,] and long lower limbs." *Id.* ¶ 48. He was further diagnosed with Loeys-Dietz Syndrome, a connective tissue disorder. *Id.*

Prior to Orsini's detention, Erie County had contracted with Defendant Wexford Health Sources, Inc. (Wexford Health) to provide medical and healthcare services to inmates at the Erie County Jail. *Id.,* ¶¶ 4-5. The agreement between Erie County and Wexford Health included a requirement that Wexford Health provide an onsite medical director for 14 hours a week—4 hours on every Monday, Thursday, and Friday and 2 hours on every Tuesday. *Id.,* ¶ 6. Wexford Health subcontracted with Defendants Medical Associates of Erie and Gary Peterson, D.O. to provide the onsite medical director services. *Id.* ¶ 8. Despite the express language of the agreements, Medical

Associates of Erie, Inc. only had an onsite medical director at the Erie County Jail for eight hours each week. *Id.* ¶ 10.

In support of Count I of her Amended Complaint, Plaintiff alleges, "Mathew Orsini's death was caused by the conduct of Erie County as follows:"

- In establishing a practice and policy of not requiring Wexford Health to adhere to its contract with Erie County to provide adequate medical services to inmates of Erie County Prison by allowing Wexford Health to fail to have a medical director on site 14 hours per week;

- In failing to require Wexford Health to adhere to the policy contract provision of providing an onsite medical director for 14 hours per week;

- In failing to ensure that Wexford Health was complying with the provisions of its contract;

- In acquiescing to inadequate medical staffing by Wexford Health;

- In failing to monitor Wexford Health's performance;

- In disregarding the consequences of Wexford Health's failure to comply with the contract;

- In failing to establish and enforce an adequate method or system for prison personnel to refer inmates to medical personnel and/or outside medical providers;

- In failing to establish and enforce an environment, culture and custom at the prison that stresses the importance of the health and safety of inmates;

- In failing to train prison personnel to promote identification and referral of inmates requiring medical attention;

- In failing to train prison personnel to refer inmates in obvious need of medical attention to medical personnel and/or outside medical providers;

- In failing to train prison personnel to not to mock inmates exhibiting signs of illness;

- In ignoring and/or dismissing inmates requests for medical treatment;

- In failing to establish and enforce an environment, culture or custom for prison personnel to assist medically ill patients and not to mock medically ill patients;

- In failing to train prison personnel of the fundamental right of inmates to access

> medical care;
> 
> - In failing to ensure that Wexford Health provide adequate medical care to inmates;
> 
> - In failing to establish and enforce an emergency medical plan for seriously ill inmates;
> 
> - In establishing and practicing a policy whereby Wexford Health was not required to have a Physician at the facility on a daily basis; and
> 
> - In establishing and practicing a policy whereby seriously ill inmates were not required to be seen by a Physician or a Physician's assistant.

*Id.* ¶ 72.

V.  Discussion and Analysis

    A.  Constitutional Standard Applicable to Pretrial Detainees

Plaintiff brings her claim against Erie County under 42 U.S.C. § 1983. For his section 1983 claims to survive, Plaintiff must demonstrate that a person acting under color of state law deprived Plaintiff's decedent of a right protected under the Constitution or laws of the United States. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003). It is undisputed that personnel at the Erie County Jail were acting under color of state law when engaged in providing medical care to Orsini. Thus, the Court's next task is to identify "the exact contours of the underlying right said to have been violated." *Cty.. of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5, 118 S. Ct. 1708, 1714, 140 L. Ed. 2d 1043 (1998) (citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–1871, 104 L.Ed.2d 443 (1989)).

In this case, Plaintiff alleges that the medical attention he received at the hands of personnel at the Erie County Jail was deliberately indifferent to his rights guaranteed to him under the Eighth and Fourteenth Amendments. Based on the parties' briefs and assertions at oral argument, some misapprehension apparently exists regarding the standard of medical treatment the Constitution requires for pretrial detainees such as Orsini. "The constitutional standard governing conditions of

confinement for detainees is whether the conditions amount to 'punishment' without due process of the law, in violation of the Fourteenth Amendment." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 n.31 (3d Cir. 1987) (citation omitted). In contrast, the standard of "deliberate indifference to serious medical need," articulated by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976), applies to claims of convicted and incarcerated prisoners, which are governed by the Eighth Amendment. The Third Circuit has emphasized that while the *Estelle* analysis can inform the Fourteenth Amendment analysis applicable to pretrial detainees, the Eighth and Fourteenth Amendment standards are not identical. *See Hubbard v. Taylor*, 399 F.3d 150, 165-66 (2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)); *Montgomery v. Ray*, 145 Fed. Appx. 738, 740 (3d Cir. 2005) (vacating and remanding district court's entry of summary judgment for defendant premised on *Estelle* analysis in a case involving pretrial detainee's claims of inadequate medical care for consideration under the Fourteenth Amendment standard). *See also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("the due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner").

In this case, Plaintiff's allegations are sufficient to state a constitutional violation under either the *Lanzaro* or *Estelle* standard. Although the Amended Complaint acknowledges that Orsini was provided some medical attention at the jail, the facts alleged support a plausible inference that the care he received was so deficient relative to his known medical conditions and emergent symptoms as to constitute unjustified "punishment" under the Fourteenth Amendment or "deliberate indifference" under the Eighth Amendment. *See Bell v. Lindsay,* 116 F.Supp.3d 511, at 516-17 (E.D. Pa. 2017) (finding a plaintiff had plausibly pled a constitutional violation under either the Eighth or Fourteenth Amendments where the plaintiff had a serious spinal-related condition, did not receive medical treatment for 24 days, had not seen a doctor for 23 days, and Defendants Smith and Phillips knew of

his need for treatment). *See, e.g., Maline v. Jail,* 2021 WL 39545, at *2 (E.D. Wis. Jan 5, 2021) (providing "the Court need not determine Maline's status at this stage because his allegations that Hooks knew that the inmate intended to follow and assault him are sufficient to state a claim under both amendments"); *Pryor v. Harper,* 2021 WL 37628 (W.D. Pa. Jan. 5, 2021). This conclusion, however, does not end the inquiry regarding Erie County's motion. Plaintiff has not asserted a section 1983 claim against any of the individuals or entities that were directly involved in Orsini's care, although Plaintiff's counsel acknowledged at the hearing on May 14, 2021 that these individuals as well as Wexford Health and Medical Associates of Erie all acted under color of state law relative to Orsini's care. Instead, Plaintiff's sole constitutional claim is a *Monell* claim against Erie County, the requirements of which are discussed below.

B. Requirements for Municipal Liability Under *Monell*

It is well-established that a municipal entity such as a county cannot be held liable for its employees' alleged constitutional violations based on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691-95, 98 S.Ct. 2018; *Panas v. City of Phila.*, 871 F. Supp. 2d 370, 377-78 (E.D. Pa. May 14, 2012). Rather, the "government itself, through its policies or practices, must be sufficiently culpable before" a court imposes § 1983 liability. *Panas*, 871 F. Supp. 2d at 377-78. Such culpability exists only "when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). Merely alleging the existence of a policy, practice, or custom is not enough. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S. Ct. 598, 46 L.Ed.2d 561 (1976). The plaintiff in a § 1983 action must show an "affirmative link" between the occurrence of alleged misconduct and the municipality's policy, custom, or practice. *Id.* Accordingly, "[o]nce a plaintiff has identified a policy or custom, she 'must show that the municipal action was taken with the requisite degree of culpability, and must

9

demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Abran v. City of Phila.*, 2020 WL 6781938, at *12 (E.D. Pa. Nov. 17, 2020) (quoting *Vulcan Pioneers of New Jersey v. City of Newark*, 374 Fed. Appx. 313, 317 (3d Cir. 2010)). If the policy does not facially violate federal law, "causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.'" *Id.* (quoting *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)). Thus, in order to impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must establish not only that he or she was deprived of a constitutional right, but that: (1) the municipality had a policy; (2) the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (3) the policy was the "moving force behind the constitutional violation." *Weber v. Erie Cty.*, 2020 WL 5983275, at *5 (W.D. Pa. Oct. 8, 2020) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-91 (1989)).

       C.      Plaintiff's Allegations of Policy and Custom

            1.      Acquiescence in Wexford's Failure to Provide an Onsite Medical Director for the Number of Hours Promised in the Medical Services Contract

Plaintiff asserts that Erie County had a policy or custom of deliberate indifference to the medical needs of inmates at the Erie County Jail that was the "moving force" behind the violation of Orsini's rights under the Eighth and Fourteenth Amendments. ECF No. 41, p 7-13. In support of this assertion, Plaintiff's Amended Complaint and brief in opposition to Erie County's motion rely primarily on the County's "acquiescence with Wexford's failing to live up to its contractual commitment to providing a physician onsite 14 hours a week, and having a physician present on Monday, Wednesday and Fridays" and acceptance of only 8 hours per week for the onsite medical director. *Id.,* p 5. Plaintiff's reliance on this contractual deviation, however, merely begs the relevant question: Did Erie County have a policy or custom of permitting Wexford Health to maintain levels of medical personnel and resources that fell below constitutional standards? This question is a matter

10

of constitutional law and, while contractual staffing requirements may have some relevance to the issue, they do not define constitutional requirements.

First, a contract between two parties simply does not set the constitutional standard; nor can a contract confer upon a substantive constitutional right upon individuals, including incarcerated individuals. *Endicott v. Hurley*, 2017 WL 76899, at *7 (E.D. Mo. 2017) (finding "Corizon's contractual provision did not confer to the inmates a new constitutional right to be seen if they arrived at sick call within fifteen minutes. Instead, the Eighth Amendment requires only a system of ready access to adequate medical care"); *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 230 n.6 (D. N.J. Mar. 28, 2000) (explaining "[t]his holding should not be read to create a constitutional cause of action for violation of the CCCF Health Procedures Manual, or for violation of any of the provisions therein. . . . Thus, to the extent that an everyday breach of a provision of a prison health services manual is actionable, a remedy would be found only in state contract law"). *Cf. Whitehurst v. Lackawanna Cty.*, 2020 WL 6106616, at*16 (M.D. Pa. Mar. 5, 2020) (asserting "the [c]ounty [also] cannot shield itself from § 1983 liability by contracting out its duty to provide medical services"). Thus, standing alone, acquiescence in a deviation from a contractual staffing entitlement does not represent a policy of deliberate indifference actionable under *Monell*.

Second, the Constitution does not mandate that prisons have a medical director on site for any amount of time. *See Calhoun v. Ramsey*, 2003 WL 1733564, at *9 (N.D. Ill. Mar. 31, 2003) (stating "contrary to Calhoun's assertions otherwise and based on the particular facts of this case, the Eighth Amendment simply does not require that Jail physicians be located on site for purposes of prescription medication verification"). Instead, the Constitution requires that a county not act with deliberate indifference to the medical needs of prisoners. *See Knepp v. Paraway*, 2020 WL 7865401, at *9-*10 (W.D. Pa. Nov. 2020). Therefore, the Constitution requires neither a specific number of doctors, nurses, PAs, etc. nor a particular number of on-site hours for a particular medical provider. *Boyett v.*

11

*Cty. of Wash.*, 282 Fed. Appx. 667, 673 (10th Cir. 2008) ("[T]here is no per se requirement that a jail provide its inmates around-the-clock access to a medical doctor"); *Knepp*, 2020 WL 7865401, at \*9-\*10 (asserting "[w]hile chest pains and other cardiac symptoms are serious medical concerns under any circumstances, the record regarding the twenty to thirty-minute delay between Knepp's presentation and his being seen by Dr. Wolfson does not support the objective element of the deliberate indifference standard). Instead, the focus is on the totality of medical resources available to meet prisoner needs. *See id.*

Therefore, to state a viable *Monell* claim in a case such as this, the plaintiff must allege facts to show that the municipal jail devoted medical staffing and resources that it knew or should have known were insufficient to meet the serious medical needs of inmates. Whether the staffing provided exceeded or fell below what the municipality contracted to receive from a third party is irrelevant absent factual allegations supporting an inference that a municipal policymaker knew or should have known that the staffing and resources that the County actually provided, directly or indirectly, were inadequate. Erie County's alleged acquiescence in Wexford providing an onsite medical director for only 8 hours per week rather than the 14 hours specified in the medical services contract is not unconstitutional on its face and, standing alone, does not represent a policy deliberate indifference or unjustified punishment. Accordingly, if Plaintiff's *Monell* claim is to survive Erie County's motion, the Amended Complaint must allege facts to support an actionable policy or custom beyond its acceptance of an onsite medical director for eight hours per week.

     2.  Plaintiff's Reliance on Deficiencies in Orsini's Treatment as Evidence of an Actionable Policy or Custom

Plaintiff's Amended Complaint and brief in opposition also rely on the alleged deficiencies in the medical care provided to Orsini as evidence that Erie County had a policy of deliberate indifference to inmates' serious medical needs. *See* ECF No. 22 ¶ 51 ("Mathew Orsini is a victim of the deliberate indifference of the Defendant's Erie County, acting through its agents, servants and employees, who,

as set forth in Paragraphs 38 and 39 above, denied him appropriate medical care, when it was obvious to layman that he was in need of immediate medical attention and needed to be hospitalized"). In this regard, Plaintiff is attempting to reverse engineer a *Monell* claim based on the Amended Complaint's allegations of the underlying Eighth or Fourteenth Amendment violation. Plaintiff's reliance on the very treatment individuals at the jail provided to Orsini is nothing more than an assertion of *respondeat superior* liability, which the Supreme Court rejected in *Monell*.. *See Mason v. PrimeCare Med., Inc.*, 2017 WL 1386198, *10-*11 (M.D. Pa. Apr. 18, 2017) (concluding "[r]ather than highlight evidence that arguably could be construed to show a deficient policy, the plaintiff has merely relied upon the alleged failures of subordinate staff in an effort to bring a § 1983 claim against the employer—which is nothing other than an effort to bring a claim for *respondeat superior* liability"). Thus, while such allegations may have supported a section 1983 claim against individuals involved in Orsini's care at the jail, they offer no support for Plaintiff's *Monell* claim against Erie County.

        3.       Factually Unsupported Allegations of Policies Allowing Inadequate Staffing, Deficient Care, and Failures to Train and Supervise

Plaintiff also alleges in broad terms that Erie County had policies or customs allowing inadequate medical staffing, insufficient medical personnel trained to recognize and respond to serious or emergent medical needs, and an absence of procedures to require personnel to refer seriously ill inmates to outside specialists, hospitals, or other appropriately equipped facilities. If supported by factual allegations any one of the foregoing would be sufficient to support a plausible *Monell* claim against Erie County. But the allegations of Plaintiff's Amended Complaint currently fail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff has failed to plead facts to support a reasonable inference that a pattern of inadequate medical treatment at the prison existed prior to Orsini's alleged deficient treatment or facts to support a reasonable inference that a policymaker was on notice the pattern of such deficient care. The Supreme Court has recognized that a local government's "culpability for a deprivation of rights is at its most tenuous where a claim turns

on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L.E.2d 417 (2011). "If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure 'amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61, 131 S. Ct. 1350 (quoting *Board of County Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.E.2d 626 (1997)).

Typically, a plaintiff meets this burden by identifying, "a pattern of similar constitutional violations by untrained employees" that "puts municipal decisionmakers on notice that a new program is necessary . . . ." *Johnson*, 975 F.3d at 403 (quoting *Thomas*, 749 F.3d at 223). "Otherwise, the plaintiff needs to show that failure to provide the identified training would 'likely . . . result in the violation of constitutional rights'—i.e., to show that 'the need for more or different training [was] so obvious." *Id.* (quoting *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197). The Third Circuit applies a three-part test to determine whether "a municipality's failure to train or supervise amount[s] to deliberate indifference." *Carter.*, 181 F.3d at 357. A plaintiff must plead: (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*; *see also Thomas v. Cumberland Cty.*, 749 F.3d 217 at 224–25 (3d Cir. 2014) (quoting *Board of County Com'rs of Bryan Cty*, 520 U.S. at 409, 117 S. Ct. 1382). ("Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights").

Plaintiff has not attempted to allege a pattern of similar constitutional violations by untrained employees. Thus, at issue is whether plaintiff has plausibly alleged that Erie County's failure to provide

14

the identified training would likely result in the violation of Orsini's Eighth/ Fourteenth Amendment rights.  *See Johnson*, 975 F.2d at 403.  Plaintiff has not identified a policymaker.  *See Scott v. Clark*, 2020 WL 4905624, at *6 (W.D. Pa. July 28, 2020) (quoting *Garcia v. Cnty. of Bucks, Pa*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (citations omitted).  Further problematic is the fact that, Plaintiff's allegations are largely conclusory, there are no facts that support an inference that the alleged deficiencies in the training program were obviously going to lead to a constitutional violation, or that this issue could have arisen with any inmate other than the deceased.  *See Robinson v. Corizon Health, Inc.*, 2016 WL 7235314, at *10 (E.D. Pa. Dec. 13, 2016); *see Giamboi v. Prison Health Servs.*, 2011 WL 5322769, at *11 (M.D. Pa. June 2, 2011) (finding "[t]he allegation that defendants PHS and PHS Correctional . . . had a policy or custom of inadequate training in dealing with prisoners with severe medical problems is also conclusory.  The complaint does not allege in what regard or how the training was inadequate").  Likewise, the Court notes deficient policies alone are insufficient to satisfy the threshold for *Monell*.  *Chruby v. Bearjar*, 2018 WL 4537404, at *17 (M.D. Aug. 27, 2018).

Given the foregoing, it is recommended that Count I of Plaintiff's Amended Complaint be dismissed.  Nevertheless, the undersigned is far from convinced that further amendment to the Plaintiff's pleading would be futile.  Therefore, it is further recommended that dismissal be without prejudice and with leave to file a second amended complaint.  *See Hockenberry v. SCI Cambridge Springs/ Pennsylvania Dep't of Corr.*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) (stating "[t]he U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile").

VI.   Conclusion

For the reasons discussed above, it is respectfully recommended that Defendants' motion to dismiss (ECF No. 36), be granted and that Count I of Plaintiff's Amended Complaint against

Defendant Erie County be dismissed, without prejudice. If Plaintiff declines to amend her pleading, it is further recommended that the Court decline to exercise supplemental jurisdiction over the Plaintiff's remaining claims in this action. Count I of the Amended Complaint is currently the sole federal cause of action. Given that this case has yet to proceed beyond the pleadings, the exercise of supplemental jurisdiction over Plaintiff's state law claim would not be warranted absent amendment to state a viable federal claim.

VII.   Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nam v. Frank*, 488 F.3d 187 (3d Cir. 2007).

Submitted this 18th day of May, 2021.

_____
RICHARD A. LANZILLO
United States Magistrate Judge