## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF
## PENNSYLVANIA

| | | |
|---|---|---|
| DAWN BROWN, as Administrator of the Estate of MATHEW ORSINI, Deceased, | ) ) ) | No.: 1:20-cv-00251-RAL<br>Issue:<br>Code: |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ERIE COUNTY, WEXFORD HEALTH SOURCES, INC., MEDICAL ASSOCIATES OF ERIE, INC., DIAGNOSTIC X-RAY SERVICE, INC., GARY L. PETERSON, D.O., and DAVID PAUL, MD | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

### A. Parties.

AND NOW, Comes the Plaintiff, Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased, by and through her Counsel, Richard C. Levine, Esquire, and Ainsman Levine, LLC and files the herein Second Amended Complaint in Civil Action and in support thereof as follows:

1.      Plaintiff, Dawn Brown, is an adult individual who resides at 9731 Peach Street, Erie County, Pennsylvania 16441, and who, on October 11, 2019, was duly appointed as Administrator of the Estate of Decedent, Mathew Orsini, by the Register of Wills of Erie County, Pennsylvania.

2.      Defendant, Erie County, owns and operates the Erie County Prison. The County is organized and exists under the laws of the Commonwealth of Pennsylvania, and is capable of

suing and being sued. Its principle place of business is located at 1618 Ash Street, City of Erie, Erie County, PA, 16503.

3.    Defendant, Wexford Health Sources, Inc. is a corporation with a principal place of business at 381 Mansfield Avenue, Pittsburgh, Pennsylvania 15220 and at all times relevant, provided medical care through its agents, staff and employees to the inmates of the Erie County Prison.

4.    It is believed and therefore averred, that Defendant Wexford Health Sources, Inc. acted as an agent of Erie County to provide medical treatment services to the Erie County Prison inmates.

5.    Wexford Health was awarded the contract by Erie County to provide healthcare services, which contract was in effect in March of 2019.

6.    Included in the agreement between Erie County and Wexford Health for the provision of inmate healthcare at the Erie County Jail, was a requirement for an on-site medical director position 14 hours a week, 4 hours on Monday, Thursday and Friday and 2 hours on Tuesday.

7.    The contract is for a three year term, effective January 1, 2016, through December 31, 2018 with two, at one year renewal options.

8.    Wexford Health, in turn, contracted with Medical Associates of Erie and Defendant, Gary Peterson, D.O. to provide services as the on-site medical director at the Erie County Prison at all times relevant hereto.

9.    Defendant, Medical Associates of Erie, Inc., is a Pennsylvania Corporation with its headquarters and principle place of business at 1 LECOM Place, Erie, PA. Plaintiff is asserting a professional liability claim against Defendant, Medical Associates of Erie.

10.     Although the contract between Erie County and Wexford Health required Wexford

Health to provide an on-site medical director 14 hours a week, Wexford, at all times as relevant

hereto, was only paying Medical Associates of Erie to have a medical director on site eight hours

a week.

11.     The result of Wexford's contract with Medical Associates of Erie is that inmates

are denied access to a medical doctor for 6 hours a week.

12.     Defendant, Gary Peterson, D.O., at all times relevant was an employee of and

Medical Director of Wexford Health Sources, Inc., Medical Associates of Erie and/or Erie

County and was engaged in the provision of medical treatment services to the inmates of Erie

County Prison.  Plaintiff is asserting a professional liability claim against Defendant Peterson.

13.     Defendant Diagnostic X-Ray Service, Inc., is a Pennsylvania corporation

organized and existing under the laws of the state of Pennsylvania with a principal place of

business at 1769 West 26th Street, Erie, Pennsylvania 16508.

14.     Defendant, Diagnostic X-Ray Service, Inc., advertises itself as a provider of

mobile diagnostic healthcare services to various public and private entities, including correctional

facilities.  Plaintiff is asserting a professional liability claim against Defendant, Diagnostic X-Ray

Service, Inc.

15.     Defendant, David Paul, is a doctor of medicine at all times relevant was employed

by Diagnostic X-Ray Service, Inc., as a radiologist.  Plaintiff is asserting a professional liability

claim against Defendant, David Paul, MD.

### B.     Jurisdiction and Venue

16.     This Court has jurisdiction under 28 U.S.C., Sections 1331, 1343(a)(3),

1343(a)(4), 1367(a), 42 U.S.C. Section 1983 and the Eighth (and Fourteenth) Amendments to the

United States Constitution.

17.    This Complaint also includes pendant State Law Claims over which this Court has supplemental jurisdiction pursuant to 28 U.S.C., Section 1337(a).

18.    Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C., Section 1391 because a substantial part of the events or admissions giving rise to this claim occurred in the territorial jurisdiction of this district and the Defendants are subject to personal jurisdiction within this District.

## C. Factual Background

19.    Mathew Orsini, nineteen years old at the time of his death, was born with a connective tissue disorder which had been diagnosed as Loeys-Dietz Syndrome or Marfans Syndrome.  As a consequence of his connective tissue disorder, Mathew Orsini had suffered from serious and severe heart complications arising from an enlarged aorta which required him at age nine to undergo an aortic root repair.

20.    As a result of his cardiac conditions, Mathew Orsini had been prescribed Atenolol and Losartan by his cardiologist.

21.    On February 25, 2019, Decedent, Mathew Orsini was incarcerated at the Erie County Prison.

22.    An intake medical history and screening was taken at Erie County Prison on February 25, 2019, by Teri Masi, LPN, an agent, servant and/or an employee of Erie County and/or Wexford Health Sources, Inc. and/or Medical Associates of Erie.  During the screening, Mathew Orsini informed Nurse Masi that he had undergone an aortic valve replacement, that he has a history of cardiovascular disease, that he has a history of being treated for hypertension, that

he has cardiac disorders and that he is currently prescribed cardiac medications. The list of medications recorded by Nurse Masi on February 25, 2019, included Atenolol 5 mg. vid. and Losartan, which were prescribed by Mathew Orsini's cardiologist.

23.     According to the "Medical Nurse Order Form" from Erie County Prison dated February 25, 2019, Mathew Orsini had a "problem" consisting of a "history of aortic valve replacement in 2009/HTN." The entry indicates that orders were required and that blood pressure checks were to be made Monday, Wednesday and Friday for two weeks with chart review. The Order provider was Christina Mealy, PA-C, an employee of Defendant Erie County, Wexford Health Sources, Inc. and/or Medical Associates of Erie.

24.     On March 11, 2019, Mathew Orsini's medical chart indicates that at 12:08 PM he reported that he had not received any medication that his cardiologist prescribed for him, "since the day I was born".

25.     On March 11, 2019, at 12:26 PM, Heidi Karash, an employee of Wexford Health Services, Inc., Medical Associates of Erie and/or Erie County, replied that according to Mathew Orsini's pharmacy he had last filled a prescription in early December and indicated on his intake that he had not been taking his medications "in a while". She further indicated that was the reason that his vital signs were being monitored and the doctor "here will review your records and your vitals and see you at your upcoming appointment to discuss a plan of care."

26.     On March 11, 2019, at 12:39 PM, Mathew Orsini replied "I never said during my intake that I have not taken my medication!!"

27.     A chart note dated March 18, 2019, at 11:31 AM, entered by Nurse Denise Long, employee of Wexford Health Sources, Inc., Medical Associates of Erie and/or Erie County, indicated that Decedent, Mathew Orsini, "notified security that he was feeling SOB, this author

assessed inmate Orsini. VS 120/80 78 22 98%. Inmate was given Ibuprofen 400 mg. 2 tabs PO

STAT. Inmate was educated on breathing techniques to slow his breathing down." Nurse Long

then indicated later on in that note that she went to check on Mathew Orsini after 0900 meds were

finished and he stated that he was feeling much better.

28.     In a notation in the "Medical Nurse Order Form" dated March 18, 2019 at 11:23

AM, Nurse Long indicated that Mathew Orsini "was C/O of pain in his whole back and tooth

pain." The same form indicated that an Order was issued by Defendant, Gary Peterson, DO for

Ibuprofen 800 mg PO STAT x 1.

29.     The Medical Nurse Order Form dated March 18, 2019, at 2:12 PM, made by Nurse

Long, indicated that Mr. Orsini "has c/o heartburn". The same form indicates that Defendant,

Gary Peterson, MD, issued a telephone order for Alum/mag/s.

30.     Heidi Karash, Director of Nursing at Erie County Prison, noted in the chart on

March 18, 2019 at 2:22 PM, that Mathew Orsini was taken to medical for an EKG. She noted

that Mathew Orsini was writhing on the table and breathing quickly, hyperventilating. He asked

for an extra dose of Ibuprofen. The note further indicates that he will be placed on regular watch

and STAT X-ray was coming to look at his chest to see if anything was aberrant.

31.     At about 3:40 PM on March 18, 2019, Mathew Orsini had X-rays taken of his

chest, lumbar spine and thoracic spine by Defendant, Diagnostic X-Ray Service, Inc.

32.     An X-ray report of Mathew Orsini's chest X-ray was authored by Defendant,

David Paul, MD at 4:22 PM.

33.     The radiology report authored by Dr. Paul indicates that Mathew Orsini's

symptoms were "SOB and pain".

34.     Dr. Paul's report, which was transcribed at 4:24 PM on March 18, 2019, states that

Dr. Paul found that the chest X-ray revealed "the heart, mediastinum and the trachea to be unremarkable except for some rotation to the left. The vasculature is not congested. No free air is noted. There is patchy density throughout the left lower lung with effusion. There has been a sternotomy." Dr. Paul's impression was "rather prominent left lower lung pneumonia with effusion."

35.    Dr. Paul interpreted the X-ray films of Mathew Orsini's lumbar spine and dictated a report on March 18, 2019 with the impression of "inferior end plate change at body of L1 which may be developmental or represent older fracture. But the exact age is indeterminate. If symptomatology persists, short term follow up series for comparison is recommended."

36.    Dr. Paul dictated a report regarding Mathew Orsini's thoracic spine X-rays on March 18, 2019 with the finding of "1. Unremarkable dorsal spine for age group. 2. Again note is made of some loss of height of the inferior endplate of the body of L1. Please see lumbar spine series report from today for further comments with regard to this."

37.    Ashley Mangano, LPN, an Employee of Defendant Wexford Health Sources, Inc., Medical Associates of Erie and/or Defendant Erie County, noted in the chart notes on March 18, 2019 at 6:33 PM that Mathew Orsini was brought to Medical at approximately 4:15 for STAT EKG after reports of SOB, back and chest pain…inmate has significant cardiac HX of aortic valve replacement in 2009. Inmate was very uncooperative while attempting EKG so a satisfactory reports[sic] was unable to be achieved. Lungs clear in all lobes. Heart rate WNL. Inmate offered breathing TX but declined. Chest, thoracic and lumbar X-ray ordered."

38.    The medical nurse order form from March 18, 2019 at 6:04 PM indicates that the X-ray results showed prominent left lower lung pneumonia with effusion. Defendant, Gary Peterson, DO, ordered a Z-Pac, Augmentin, repeat chest X-ray on 3/26/19 and check vital signs

q shift x 5 days.

39.     It is believed and therefore averred, that at some point, on March 18, 2019, Decedent, Mathew Orsini threw up on the floor in front of the counter in B-pod, during medication pass out. At that point, Mathew Orsini appeared pale and frail looking and was wobbling.

40.     It is believed and therefore averred, at that time, a staff nurse, and employee of Wexford Health, Medical Associates of Erie and/or Erie County, who was behind the counter failed to provide any assistance to Decedent, Mathew Orsini, and instead, taunted Mathew Orsini with an employee of Erie County, Corrections Officer Howell, saying that Decedent, Mathew Orsini "just needs his Mommy."

41.     At that time, the corrections officers responsible for Mathew Orsini told him to "shower it off" and that he was fine.

42.     It is believed and therefore averred that at other times during the day on March 18, 2019, Decedent, Mathew Orsini was complaining about chest pains and was holding his chest while vomiting.

43.     The chart notes from March 18, 2019 at 10:31 PM indicate that Code 3 was called at 2150. When medical arrived, Mathew Orsini was lying on his floor with slow respirations and he was unresponsive. "Was not able to get a blood pressure and pulse was thread. The EMS was called at 10:01 PM, and when arrived, CPR was started and bagging was continued. ED pads were placed while CPR was continued and shock was not advised X2. Mathew Orsini was placed on EMS stretcher and was taken to UPMC Hamot."

44.     Decedent, Mathew Orsini, was transported to UPMC Hamot via ambulance, and, en route, received multiple vials of epinephrine, and chest compressions.

45.     Decedent, Mathew Orsini, was seen at UPMC Hamot on March 18, 2019 at 10:40

PM.

46.     At UPMC Hamot, Mathew Orsini was give 3 litres of normal saline and started

Norepinephrine drip.  Shortly after this he decompensated into PEA and CPR was resumed.  A

bedside ultrasound revealed cardiac standstill and the time of death of Mathew Orsini was listed

at 11:01 PM on March 18, 2019.  The EKG was read by Defendant, Christina Mealy, PA-C.

47.     An autopsy was performed of Mathew Orsini on March 28, 2019 at UPMC

Children's Hospital of Pittsburgh.  The autopsy report concluded that the cause of death was

rupture of an aortic aneurysm.  Included in the final autopsy diagnosis was "dissecting aortic

aneurysm (Type 1) with rupture of aortic root."

48.     The final autopsy report also indicated that Mathew Orsini had a "marfanoid body

habitus consisting of pectus excavatum, retrognathia, arachnodactyly, camptodactyly and long

lower limbs."  The final autopsy diagnosis also noted that Mathew Orsini was a 19 year old male

with connective tissue disorder (Loeys-Dietz Syndrome).

49.     Decedent, Mathew Orsini, had other visual indications of his connective tissue

disorder including twisted and deformed fingers.

50.     Decedent, Mathew Orsini's connective tissue disorder should have been apparent

to the medical providers at Erie County Prison, or should at least have led them to inquire as to

whether he had any medical condition related to his marfanoid body habitus.

51.     Mathew Orsini is a victim of the deliberate indifference of the Defendant's Erie

County, acting through its agents, servants and employees, who, as set forth in Paragraphs 38 and

39 above, denied him appropriate medical care, when it was obvious to layman that he was in

need of immediate medical attention and needed to be hospitalized.

52.     On March 18, 2019, according to fellow inmates, Mathew Orsini was pale,

wobbling around, clutching his chest and vomiting in front of a nurse and another employee of Erie County who refused to provide him with obviously needed medical treatment. Correction officers refused to allow Mathew Orsini to obtain obviously needed medical treatment and told him that there was nothing wrong with him.

53.    It was obvious to other inmates that Mathew Orsini was in desperate need of medical attention, and yet the Prison staff refused to allow him to obtain any treatment for his serious medical condition.

54.    Mathew is survived by his minor child, Olivia Orsini.

55.    Plaintiff Dawn Brown, as the Administrator of the Estate of Mathew Orsini, deceased, brings this wrongful death and survival action pursuant to the Pennsylvania wrongful death Act, 42 Pa. CSA Section 8301, and Pa. CSA Section 8302, seeking all recoverable damages thereunder.

56.    Pursuant to 42 Pa. CSA Section 8301(b), the sole beneficiary entitled to recover under the Pennsylvania Wrongful Death Act is Olivia Orsini.

57.    Mathew Orsini did not bring an action for his personal injuries during his lifetime and no other action for the death of Mr. Orsini has been commenced.

58.    As a direct and proximate result of the failure to adhere to the standard of care required, and/or other culpable conduct of the employees and agents of Defendants Wexford Health, Erie County and Medical Associates of Erie, including but not limited to Defendant Peterson, Diagnostic X-Ray Service and David Paul, M.D., the Plaintiff Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased, is entitled to recover for his untimely death, on behalf of Mr. Orsini's beneficiary, all possible damages pursuant to the Wrongful Death Act.

59.     Plaintiff Dawn Brown, as the Administrator of the Estate of Mathew Orsini, deceased, brings this survival action on behalf of the Estate of Mathew Orsini, deceased, pursuant to the Pennsylvania Survival Act, 42 Pa. CSA Section 8302, seeking all recoverable damages thereunder.

60.     As a direct and proximate result of the negligence of the employees and agents of Defendants Wexford Health, Erie County and Medical Associates of Erie, including but not limited to Defendant Peterson, and as a proximate and direct result of the negligence of the employees and agents of Defendant Diagnostic X-Rays Service, including, but not limited to, David Paul, MD, Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased, is entitled to recover for his untimely death, all permissible damages pursuant to the Survival Act.

### D. Legal Standard

61.     Because inmates "must rely on prison authorities to treat [their] medical needs," the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

62.     In *Estelle,* the United States Supreme Court held that because an inmate must rely on prison authorities to treat his medical needs and cannot provide for his own medical needs, failing to meet those needs causes unnecessary pain and suffering, and sometimes death which violates the Eighth Amendment to the Constitution which bans cruel and unusual punishment.

63.     In order to prove an Eighth Amendment violation, the plaintiff must show that the defendant was "'deliberate[ly] indifferen[t]' to inmate health or safety," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

64.     Deliberate indifference to the inmate's serious medical needs violates the Eighth Amendment, "whether the indifference is manifested by prison doctors in their response to the

prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-105.

65.    A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied* 486 U.S. 1006, 108 S. Ct. 1731, 100 L. Ed. 2d 195 (1988).

66.    Deliberate indifference may be manifested in a variety of ways. As the Third Circuit stated in *Monmouth County Corr. Inst:*

> "Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate "to undue suffering or the threat of tangible residual injury," deliberate indifference is manifest. Similarly, where "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care," the deliberate indifference standard has been met. Short of absolute denial, "if necessary medical treatment is . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that "result[] in interminable delays and outright denials of medical care to suffering inmates." Prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for "'an easier and less efficacious treatment'" of the inmate's condition. Nor may they condition provision of needed medical services on the inmate's ability or willingness to pay. Finally, deliberate indifference is demonstrated "when . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to physician capable of evaluating the need for such treatment." *Monmouth County, supra.*

## COUNT 1 - VIOLATION OF CIVIL RIGHTS – 42 U.S.C. Section 1983 U.S. CT.

*Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased,*
*v.*
*Erie County*

67.    The foregoing averments are hereby incorporated by reference, as it is fully set forth herein.

68.     Erie County operated the Erie County Prison and was authorized and responsible for maintaining the prison for the purposes of safely detaining, incarcerating, protecting and rehabilitating citizens and inhabitants of Erie County, Pennsylvania.

69.     Erie County was responsible for establishing and enforcing policies and procedures to insure the safety, health, availability and provision of adequate medical treatment to all inmates at the prison.

70.     Erie County represented the legal authority and official policy of Erie County regarding prison personnel, actions, duties, responsibilities, training, procedures and supervision for the health, safety, availability and provision of adequate medical treatment of inmates and as such, acted under the color of state law.

71.     In or around 2012, the Erie County Prison and Wexford agreed to reduce the number of hours that the contract between Erie and Wexford required for the presence of a physician on-site from 14 hours per week to eight hours per week.

72.     This agreement was approved by Erie County Prison Warden James Veshecco.

73.     According to Erie City Comptroller, Mary Schaaf, the reduction in physician hours remained in effect through April of 2019.

74.     According to Ms. Schaaf, Wexford failed to provide 2,280 hours of physician time through April, 2019.

75.     Ms. Schaaf began to investigate the question regarding how many hours a physician was to be at the prison after a lawsuit was filed against Erie County on behalf of April Corritore (1:19-cv-00018, Western District of PA), a young woman who died in Erie County Prison in October of 2018 due to allegedly inadequate medical care.

76.     In a letter dated May 1, 2019 from Ms. Schaaf to Wexford, Ms. Schaaf indicated

that she would file a lawsuit against Wexford if it did not reimburse the County for breaching the contract by reducing the number of hours a physician was required to be on site.

77.     It is believed and therefore averred that the reason Erie threatened to sue Wexford, in part, was that Erie recognizes a difference in the level of care provided by a physician versus a physician's assistant, and that Wexford was failing to meet the serious medical needs of Prison inmates by reducing the number of physician hours.

78.     Erie contracted with Wexford to provide 14 hours of physician hours per week in order to be able to meet the serious medical needs of its inmates.

79.     In acquiescing to Wexford only providing eight hours of physician time per week, between 2012 and April or May of 2019, Erie implemented and followed a policy of devoting inadequate staffing and resources, which it knew, or reasonable should have known, were insufficient to meet serious medical needs of its inmates.

80.     Erie terminated its contract with Wexford after April, 2019.

81.     By waiting over seven years to address the inadequacy of the medical care of the Prison, Erie policy makers were deliberately indifferent to the serious medical needs of its inmates.

82.     At no time between 2012 and May of 2019, did Erie conduct any studies or make any type of inquiry to ascertain how reduction of physician time affected the quality of care provided to inmates.

83.     By acquiescing to Wexford's failure to provide adequate medical care for inmates for over seven years, until after it was sued for inadequate medical care in January of 2019, Erie was deliberately indifferent to the serious medical needs of its inmates.

84.     Erie's custom, policy or practice of failing to provide adequate medical care for

inmates such as Mathew Orsini, resulted in Mathew Orsini receiving inadequate medical care while in Erie County Prison, leading to his death on March 18, 2019.

85.    Erie's policy, custom or practice of failing to have a physician on the premises 14 hours a week was a substantial contributing factor in the failure to diagnose Mathew Orsini's serious medical condition, resulting in his death.

86.    Erie's policy, custom or practice of failing to have sufficient medical care available for its inmates as aforesaid amounted to punishment of Mathew Orsini without due process of law, in violation of the 14th Amendment.

87.    Erie County deprived Mathew Orsini, a pre-trial detainee, of the rights, privileges and immunities secured to him by 42 USC Section 1983 and by the 8th and 14th Amendments to the United States Constitution, as well as rights, privileges and immunities provided by the Pennsylvania Constitution.

88.    Mathew Orsini's death was caused by the conduct of Erie County as follows:

a. In establishing a practice and policy of not requiring Wexford Health to adhere to contract with Erie County to provide adequate medical services to inmates of Erie Count Prison by allowing Wexford to fail to have a medical director on site 14 hours per week;

b. In failing to require Wexford to adhere to the policy contract provision of providing an one site medical director 14 hours per week;

c. In failing to ensure that Wexford was complying with the provisions of its contract;

d. In acquiescing to inadequate medical staffing by Wexford;

e. In failing to monitor Wexford Health's performance;

f. In disregarding the consequences of Wexford's failure to comply with the contract;

g. In failing to establish and enforce an adequate method or system for prison personnel to refer inmates to medical personnel and/or outside medical providers;

h. In failing to establish and enforce an environment, culture and

custom at the prison that stresses the importance of the health and safety of inmates;

    i.   In failing to train prison personnel to promote identification and referral of inmates requiring medical attention;

    j.   In failing to train prison personnel to refer inmates in obvious need of medical attention to medical personnel and/or outside medical providers;

    k.   In failing to train prison personnel to not to mock inmates exhibiting signs of illness;

    l.   In ignoring and/or dismissing inmates requests for medical treatment;

    m.  In failing to establish and enforce an environment, culture or custom for prison personnel to assist medically ill patients and not to mock medically ill patients;

    n.   In failing to train prison personnel of the fundamental right of inmates to access medical care;

    o.   In failing to ensure that Wexford Health provide adequate medical care to inmates;

    p.   In failing to establish and enforce an emergency medical plan for seriously ill inmates;

    q.   In establishing and practicing a policy whereby Wexford Health was not required to have a Physician at the facility on a daily basis;

    r.   In establishing and practicing a policy whereby seriously ill inmates were not required to be seen by a Physician or a Physician's assistant.

89.    Erie County's conduct was deliberately indifferent to Mathew Orsini's serious medical need and was willful, wanton and reckless disregard of the rights of others.

**WHEREFORE**, Plaintiff, Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased, respectfully requests that judgement be entered in her favor and against Defendant, Erie County, and in an amount in excess of $75,000.00, along with her attorney fees pursuant to 42 U.S.C. Section 1983, and all other relief allowed by law.

## COUNT II - WRONGFUL DEATH ACTION

*Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased,*
*v.*
*Gary Peterson, DO, Wexford Health Sources, Inc., and Medical Associates of Erie, Inc.*

90.    The foregoing averments are incorporated herein by reference as if set forth fully herein.

91.    Defendant Peterson and other employees and/or agents and/or ostensible agents of Wexford Health, and/or Medical Associates of Erie, Inc., were negligent, including but not limited to, in the following respects directly, accumulatively, and/or alternatively:

    a.    In failing to perform a thorough and comprehensive initial receiving screening;

    b.    In failing to verify Mathew Orsini's medications in a timely manner;

    c.    In failing to provide Mathew Orsini's medications in a timely manner;

    d.    In failing to perform a thorough and appropriate emergency assessment;

    e.    In failure to properly train their nursing staff and for failing to create and/or implement policies and procedures for screening and assessment of patients with chronic illness, patient's on life sustaining medication and patients with emergency/life threatening medical needs;

    f.    In failing in the receiving screening to ask Mathew Orsini the reason why he had a cardiac surgery when he was nine years old;

    g.    In failing to determine Mathew Orsini had a connective tissue disorder;

    h.    In failing to review the X-Ray films taken by Defendant Diagnostic X-Ray Services;

    i.    In failing to accurately review the X-ray films taken by Defendant X-Ray Diagnostic Services;

    j.    In failing to determine that the X-rays showed that Mathew Orsini's aorta was distended;

    k.    In failing to determine that the X-rays showed that Mathew Orsini had indications of a connective tissue disorder;

    l.    In continuing to treat Mathew Orsini for pneumonia when it was evident that his condition was worsening and were caused by his cardiac condition;

    m.    In failing to recognize that Mathew Orsini's chest and back pain, shortness of breath and vomiting were not caused by pneumonia;

    n.    In failing to order an Echocardiogram or a Cat Scan with Contrast;

o.    In failing to recognize the risk of aortic dissection;

p.    In failing to recognize the life threatening nature of Mathew Orsini's condition;

q.    In failing to recognize the need for emergent medical care;

r.    In failing to recognize the need for a higher level of care in a timely manner;

s.    In failing to recognize in a timely manner that Mathew Orsini's aorta was dissecting;

t.    In failing to treat Mathew Orsini's cardiac condition;

u.    In failing to recognize Mathew Orsini's connective tissue disorder;

v.    In failing to order the appropriate diagnostic studies;

w.    In incorrectly diagnosing Mathew Orsini with pneumonia;

x.    In failing to recognize that Mathew Orsini was at a higher risk of an aortic dissection due to his connective tissue disorder;

y.    In failing to consult a cardiac specialist;

z.    In failing to properly regard Mathew Orsini's complaints of pain and other symptoms;

aa.    In failing to properly diagnose the nature of Mathew Orsini's problem or the seriousness thereof and act according to reasonable standards;

bb.    In failing to maintain and keep adequate records, reports and notes so as to allow proper treatment and follow up;

cc.    In failing to obtain Mathew Orsini's cardiology records upon learning that he had an aortic valve replacement at age 9, had a heart condition and was on medications for his heart condition;

dd.    In failing to factor in Mathew Orsini's connective tissue disorder when diagnosing the cause of his symptoms on March 18, 2019;

ee.    In failing to obtain Mathew Orsini's cardiology records which would indicate that he had a connective tissue disorder and had an aortic root repair;

ff.    In failing to have Mathew Orsini seen by a physician during his incarceration up through and including March 18, 2019; and,

gg.    In failing to have a licensed physician on site on March 18, 2019.

92.    As a direct and proximate result of the negligent conduct of Defendants Peterson

and other employees and/or agents and/or ostensible agents and/or servants of Wexford Health and/or Medical Associates of Erie, Decedent Orsini experienced and suffered unnecessary pain and death.

93.    Defendant, Wexford Health Sources, Inc., is vicariously liable for the acts of its employees, agents, and/or servants, and/or ostensible agents including but not limited to Defendant Peterson and others.

94.    Defendant, Medical Associates of Erie, is vicariously liable for the acts of its employees, agents, and/or servants, and/or ostensible agents including but not limited to Defendant Peterson and others.

95.    The medical care, diagnosis and treatment services rendered by Defendants Peterson and other employees, and/or agents of Wexford Health and/or Medical Associates of Erie, was performed in a negligent and careless manner, and not in accordance with professional standards required of the conditions presented by Mathew Orsini.

96.    As a direct and proximate result of the negligence of Defendants Peterson and other Wexford Health employees and/or agents, servants and/or ostensible agents and/or other medical associates of Erie employees and/or agents, Mathew Orsini experienced pain and suffering, inconvenience, mental anguish, and upset, and humiliation and embarrassment, loss of life's pleasures and his untimely death.

97.    As a result of the negligence of the Defendants as aforesaid, the Plaintiff, Dawn Brown, as Administrator of the Estate of Mathew Orsini, claims all appropriate damages under the Wrongful Death Act, including but not limited to the following:

       a.    Loss of economic contributions;

       b.    Loss of society, companionship, counseling, services, assistance,

guidance, and tutelage of Mathew Orsini;

    c.    Funeral expenses; and

    d.    Estate Administration expenses.

**WHEREFORE**, Plaintiff, Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased, demands judgement against Defendants Gary Peterson, DO, Wexford Health Sources, Inc., and Medical Associates of Erie in an amount in excess of $75,000.00 plus interest and costs.

## COUNT III - SURVIVAL ACTION

*Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased,*
*v.*
*Gary Peterson, DO, Wexford Health Sources, Inc., and Medical Associates of Erie*

98.    Defendants Peterson, and other employees and/or agents and/or ostensible agents of the Wexford Health and/or Medical Associates of Erie were negligent, including but not limited to, in the following respects directly, accumulatively and/or alternatively :

    a.    In failing to perform a thorough and comprehensive initial receiving screening;

    b.    In failing to verify Mathew Orsini's medications in a timely manner;

    c.    In failing to implement Mathew Orsini's medications in a timely manner;

    d.    In failing to perform a thorough and appropriate emergency assessment;

    e.    In failure to properly train their nursing staff and for failing to create and/or implement policies and procedures for screening an assessment of patients with chronic illness, patient's on life sustaining medication and patients with emergency/life threatening medical needs;

    f.    In failing in the receiving screening to ask Mathew Orsini the reason why he had an aortic valve replacement when he was nine years old;

    g.    In failing to determine Mathew Orsini had a connective tissue disorder;

    h.    In failing to review the X-Ray films taken by Defendant Diagnostic X-Ray Services;

    i.    In failing to accurately review the X-ray films taken by Defendant X-Ray Diagnostic Services;

j.    In failing to determine that the X-rays showed that Mathew Orsini's aorta was distended;

k.    In failing to determine that the X-rays showed that Mathew Orsini had indications of a connective tissue disorder;

l.    In continuing to treat Mathew Orsini for pneumonia when it was evident that his condition was worsening and were caused by his cardiac condition;

m.    In failing to recognize that Mathew Orsini's chest and back pain, shortness of breath and vomiting were caused by pneumonia;

n.    In failing to order an Echocardiogram or a Cat Scan with Contrast;

o.    In failing to recognize the risk of aortic dissection;

p.    In failing to recognize the life threatening nature of Mathew Orsini's condition;

q.    In failing to recognize the need for emergent medical care;

r.    In failing to recognize the need for a higher level of care in a timely manner;

s.    In failing to recognize that Mathew Orsini's aorta was dissecting in a timely manner;

t.    In failing to treat Mathew Orsini's cardiac condition;

u.    In failing to order the appropriate diagnostic studies;

v.    In incorrectly diagnosing Mathew Orsini with pneumonia;

w.    In failing to recognize that Mathew Orsini was at a higher risk of an aortic dissection due to his connective tissue disorder;

x.    In failing to consult a cardiac specialist;

y.    In failing to properly regard Mathew Orsini's complaints of pain and other symptoms;

z.    In failing to properly diagnose the nature of Mathew Orsini's problem or the seriousness thereof and act according to reasonable standards;

aa.    In failing to maintain and keep adequate records, reports and notes so as to allow proper treatment and follow up;

bb.    In failing to recognize Mathew Orsini's connective tissue disorder;

cc.    In failing to factor in Mathew Orsini's connective tissue disorder when diagnosing the cause of his symptoms on March 18, 2019;

dd.    In failing to obtain Mathew Orsini's cardiology records upon learning of

his cardiac issues at his February 25, 2019 Initial Screening, which would indicate that Mathew Orsini had an aortic root repair and had a connective tissue disorder;

ee.    In failing to have Mathew Orsini seen by a physician during his incarceration up to and including March 18, 2019; and,

ff.    In failing to have a licensed physician on site on March 18, 2019.

99.    As a direct and proximate result of the negligent conduct of Defendants Peterson and other employees and/or agents and/or ostensible agents and/or servants of Wexford Health, and/or Medical Associates of Erie, Mathew Orsini experienced and suffered unnecessary pain and death.

100.    Defendant, Wexford Health Sources, Inc., is vicariously liable for the acts of its employees, agents and/or servants, including but not limited to Defendants Peterson and others.

101.    Defendant, Medical Associates of Erie, is vicariously liable for the acts of its employees, agents, and/or servants, and/or ostensible agents including but not limited to Defendants Peterson and others.

102.    The medical care, diagnosis, treatment and services rendered by Defendants Peterson and other employees, servants and/or agents and/or ostensible agents of Wexford Health and/or Medical Associates of Erie, were performed in an indifferent and careless manner, and not in accordance with professional standards required of the conditions presented by Mathew Orsini.

103.    As a direct and proximate result of the negligence of Defendants Peterson and other employees, servants and/or agents and/or ostensible agents of Wexford Health, and/or Medical Associates, Mathew Orsini experienced pain and suffering, inconvenience, mental anguish, loss of income, loss of earning capacity, humiliation and embarrassment, loss of life's pleasures and his untimely death.

**WHEREFORE**, Plaintiff, Dawn Brown, as Administrator of the Estate of Mathew Orsini,

deceased, demands judgement against Defendants Gary Peterson, DO, Wexford Health Sources, Inc., and

Medical Associates of Erie, Inc., in an amount in excess of $75,000.00 plus interest and costs.

## COUNT IV

## WRONGFUL DEATH

*Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased,*
*v.*
*Diagnostic X-Ray Services, Inc., and David Paul, MD*

104.    The foregoing averments are incorporated herein by reference as if set forth fully

herein.

105.    Defendants Diagnostic X-Ray Services, Inc., and David Paul, MD, and other

employees and/or agents of Diagnostic X-Ray Services, Inc. were negligent, including but not

limited to, in the following respects directly, accumulatively, and/or alternatively :

  a.    In failing to interpret and report Mathew Orsini's spinal X-rays as showing indications of a connective tissue disorder;
  b.    In failing to diagnose and report the abnormal configuration with thinning of the posterior ribs in the thoracic spine X-rays;
  c.    In failing to diagnose and report the enlarged appearance of the heart;
  d.    In failing to diagnose and report the aorta being tortuous or dilated;
  e.    In failing to correlate the findings on the X-rays with Mathew Orsini's past cardiac history;
  f.    In failing to correlate the X-ray findings with Mathew Orsini's symptoms;
  g.    In failing to inform Mathew Orsini's treating providers that the X-rays showed evidence of a connective tissue disorder, an enlarged heart and a tortuous or dilated aorta.

106.    As a direct and proximate result of the negligent conduct of Defendants Diagnostic

X-Ray Services, Inc. and David Paul, MD, and other employees, servants and/or agents and/or

ostensible agents of Diagnostic X-Ray Services, Inc., Mathew Orsini experienced and suffered

unnecessary pain and death.

107.    Defendant Diagnostic X-Ray Services, Inc. is vicariously liable for the acts of its employees, agents and/or servants, including but not limited to Defendant David Paul, MD.

108.    The medical care, diagnosis, treatment and services rendered by Defendants David Paul, MD and other employees and/or agents and/or ostensible agents of Diagnostic X-Ray Services, Inc, was performed in a careless and negligent manner, and in not in accordance with professional standards required of the conditions presented by Mr. Orsini.

109.    As a direct and proximate result of the negligence of Defendant David Paul, MD and other Diagnostic X-Ray Services, Inc. employees and/or agents, and/or ostensible agents, Mathew Orsini experienced pain and suffering, inconvenience, mental anguish and upset, humiliation and embarrassment, loss of life's pleasures and untimely death.

110.    As a result of the negligence of Defendants David Paul, MD and Defendant Diagnostic X-Ray Services, Inc., Plaintiff, on behalf of the wrongful death of herself and the wrongful death beneficiary, claims all appropriate damages under the Wrongful Death Act including, but not limited to the following:

      a.      Loss of economic contributions;

      b.      Loss of society, companionship, counseling, services, assistance, guidance, and tutelage of Mathew Orsini;

      c.      Funeral expenses; and

      d.      Estate Administration expenses.

**WHEREFORE**, Plaintiff, Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased, demands judgement against Defendants David Paul, MD and Diagnostic X-Ray Services, Inc., in an amount in excess of $75,000.00 plus interest and costs.

## COUNT V

## SURVIVAL

*Dawn Brown, as Administrator of the Estate of Mathew Orsini, deceased,*
*v.*
*Diagnostic X-Ray Services, Inc., and David Paul, MD*

111.    Defendants, David Paul MD and other employees and/or agents and/or ostensible

agents of Diagnostic X-Ray Services, Inc., were negligent, including but not limited to, in the

following respects directly, accumulatively, and/or alternatively :

>    a.    In failing to interpret Mathew Orsini's spinal X-rays as showing
>           indications of a connective tissue disorder;
>    b.    In failing to report the abnormal configuration with thinning of the
>           posterior ribs in the thoracic spine X-rays;
>    c.    In failing to diagnose and report the enlarged appearance of the heart;
>    d.    In failing to diagnose and report the aorta being tortuous or dilated;
>    e.    In failing to correlate the findings on the X-rays with Mathew Orsini's past
>           cardiac history;
>    f.    In failing to correlate the X-ray findings with Mathew Orsini's symptoms;
>    g.    In failing to inform Mathew Orsini's medical providers that the X-rays
>           showed evidence of a connective tissue disorder, an enlarged heart and a
>           tortuous or dilated aorta.

112.    As a direct and proximate result of the negligent conduct of the Defendants David

Paul, MD and other employees and/or agents and/or ostensible agents of Diagnostic X-Ray

Services, Inc., Mathew Orsini experienced and suffered unnecessary pain and death.

113.    Defendant Diagnostic X-Ray Services, Inc., is vicariously liable for the acts of its

employees, agents and/or servants, and/or ostensible agents including but not limited to

Defendant David Paul, MD.

114.    The medical care, diagnosis, treatment and services rendered by Defendants,

David Paul, MD and Diagnostic X-Ray Services, Inc. and other employees and/or agents and/or

ostensible agents of Diagnostic X-Ray Services, Inc. were performed in a careless and negligent

manner and not in accordance with professional standards required by the conditions presented

by Mathew Orsini.

115.    As a direct and proximate result of the negligence of Defendants David Paul, MD and other employees and/or agents and/or ostensible agents of Diagnostic X-Ray Services, Inc., Mathew Orsini experienced pain and suffering, inconvenience, mental anguish and anxiety and upset, humiliation and embarrassment, loss of life's pleasures, loss of earnings and loss of earning capacity.

   **WHEREFORE**, Plaintiff, Dawn Brown, requests that this Honorable Court enter judgement in her favor and against Defendants David Paul, MD and Diagnostic X-Ray Services, Inc., in an amount in excess of $75,000.00 plus interest and costs.

Respectfully submitted,

*/s/ Richard C. Levine*

Richard C. Levine, Esquire
Pa. I.D. No. 36627
AINSMAN LEVINE, LLC
Firm No. 975
310 Grant Street, Suite 1500
Pittsburgh, PA 15219
(412) 338-9030

rl@ainsmanlevine.com

Filed on behalf of Plaintiff:
*Dawn Brown, as Administrator of the
Estate of Mathew Orsini, deceased*

**JURY TRIAL DEMANDED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF
## PENNSYLVANIA

| | | |
|---|---|---|
| DAWN BROWN, as Administrator of the Estate of MATHEW ORSINI, Deceased, | ) ) ) | No.: 1:20-cv-00251-RAL Issue: Code: |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ERIE COUNTY, WEXFORD HEALTH SOURCES, INC., MEDICAL ASSOCIATES OF ERIE, INC., DIAGNOSTIC X-RAY SERVICE, INC., GARY L. PETERSON, D.O., DAVID PAUL, MD, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2021, the foregoing Second Amended Complaint Pursuant to Fed. R. Civ. P. 15 was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties who have appeared of record by operation of the Courts ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Those parties may access this filing through the courts ECF system.

*/s/ Richard C. Levine*

Richard C. Levine, Esquire
*Counsel for Plaintiff*